UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROSALEE WILSON | * | |
| 11856 Cordova Road | | |
| Cordova, Maryland 21625 | * | |
| | | |
| And | * | |
| | | |
| | * | |
| | | |
| QUINTEL WILSON, SR. | * | |
| 5528 Baccalaureate Drive | * | |
| Virginia Beach, Virginia 23462 | | |
| | * | |
| | | |
| *Plaintiffs* | * | |
| | | |
| VS. | * | |
| | | |
| MICHAEL TURNER | * | |
| 305 E. Joppa Road | | |
| Towson, Maryland 21286 | * | |
| | | |
| AND | * | |
| | | |
| AMERICA'S FINANCIAL TRUST, LLC | * | |
| 1646 Bond Road | | |
| Parkton, Maryland 21120 | * | Civil Case No. |
| | | |
| SERVE ON: | * | (Unlawful Debt Collection Practices) |
| Chigozie (Chazie) Nnabue | | |
| 1646 Bond Road | | |
| Parkton, Maryland 21120 | * | |
| Resident Agent | | |
| Service, Resident Agent Company | * | |
| 7 St. Paul Street, Suite 1660 | | |
| Baltimore, Maryland 21202 | * | |
| | | |
| AND | * | |
| | | |
| CHIGOZIE (CHAZIE) NNABUE | * | |
| 1646 Bond Road | | |
| Parkton, Maryland 21120 | | |
| | | |
| *Defendants* | | |

1

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

<u>**COMPLAINT**</u>

## I.   INTRODUCTION

1.      This is an action for damages brought by Quintel Wilson, Sr. and Rosalee
Wilson, individual consumers, against Defendants Michael Tuner ("Turner") and
America's Financial Trust, LLC ("AFT") and Chigozie (Chazie) Nnabue for violations of
the Fair Debt Collection Practices Act, 15 U.S.C § 1692 *et seq*. ("FDCPA") and for
violations of Maryland's Consumer Debt Collection Statute (MD. CODE ANN., COM. LAW
ART. § 14-201 et seq.), which prohibits debt collectors from engaging in abusive,
deceptive, and unfair practices.  In addition, this action is brought against Defendants for
violation of Maryland's Consumer Protection Act (MD. CODE ANN., COM. LAW ART. §
13-301 *et seq*.), which declares any violation of the Consumer Debt Collection act an
unfair and deceptive trade practice and also prohibits the other predatory, unfair, and
deceptive actions of Defendants.

## II.  JURISDICTION AND VENUE

2.      Jurisdiction of this Court arises under 15 U.S.C § 1692k(d), 28 U.S.C §
1337, and supplemental jurisdiction exist for the state law claims pursuant to 28 U.S.C. §
1367.  Declaratory relief is available pursuant to 28 U.S.C. § 2201 and 2202.  Venue in
this District is proper in that the Defendants transact business here and the conduct
complained of occurred here.

## III.  PARTIES

3.      Plaintiff Quintel Wilson is a natural person residing in Virginia Beach,

Virginia.  Plaintiff Rosalee Wilson is a natural person, is Quintel Wilson's grandmother and resides in Talbot County, Maryland

4.      Defendant Michael Turner is a natural person engaged in the business of collecting debts in this state with his principal place of business located in Baltimore County, Maryland.  Defendant Turner regularly attempts to collect debts alleged to be due to another and uses the mails and telephones to conduct his actions.

5.      Defendant AFT is a Maryland company currently not in good standing in the State of Maryland which is in the business of collecting debts in this state with its principal place of business located in Baltimore County, Maryland.  Defendant AFT regularly attempts to collect debts alleged to be due to another and uses the mails and telephones to do so.

6.      Defendant Chhigozie (Chazie) Nnabue is a natural person engaged in the business of collecting debts in this state with his principal place of business located in Baltimore County, Maryland.  Defendant Nnabue regularly attempts to collect debts alleged to be due to another and uses the mails and telephones to conduct his actions.  In addition Defendant Nnabue is the owner of AFT, a company not properly incorporated in the State of Maryland.  Defendant Nnabue is liable personally for the actions of AFT.

7.      These three Defendants are "debt collectors" as defined by the FDCPA, 15 U.S.C § 1692a(6)  and "collectors" attempting to collect an alleged debt arising out of a consumer transaction as defined by MD. CODE ANN., COM. LAW ART § 14-201.

## IV. FACTS COMMON TO ALL COUNTS

8.      On or about June 18, 2010 Plaintiff Quintel Wilson Sr. entered into an agreement with Crawford Johnson's Bail Bonds and paid $650.00 for bail for his father,

3

Miles Grady.  Bail was revoked the next day and Mr. Wilson believed that because bail

was never paid he owed no further moneys under the agreement.

9.      In summer 2013, more three years after the alleged debt was incurred and

allegedly unpaid, Plaintiff Rosalee Wilson received a call from an AFT, representative

whom she believed was Defendant Michael Turner.  He said he was looking for someone

whose name Ms. Wilson didn't recognize.  He referred to this person as Ms. Wilson's

son. Ms. Wilson explained that she didn't know any such person and that this person was

not her son.  That was the end of the conversation.

10.      Ms. Wilson received another call the next day from the same person.  At

this time the AFT representative, most likely Michael Turner, said he was looking for

"Miles Gray."  Miles Gray is the father of Ms. Wilson's grandson, Plaintiff Quintel

Wilson.  Ms. Wilson explained that Miles Gay doesn't live with her.  The AFT agent then

told Ms. Wilson that she should know him because he's her son.  Ms. Wilson explained

that this wasn't true.

11.      Then the AFT agent asked Ms. Wilson if she knew Quintel Wilson.  Ms.

Wilson told him that Quintel Wilson was her grandson.  He then told her that Quintel

Wilson owes him money and asked if Mr. Wilson was there.

12.      At that point the AFT agent got very angry and said Ms. Wilson was

"dumb" and asked, "How do you not know what's going on in your house?" and accused

her of  having drugs dealt out of her house.  She replied that her grandson Quintel doesn't

even live with her and the AFT agent responded that she knew what was going on.  He

then asked Ms. Wilson if she went to church and believed in God. He said, "If you

believe in God why do you let them deal drugs out of your house?"  Ms. Wilson became

very upset and hung up.

13.     Later after Ms. Wilson calmed down she called Defendant AFT back and asked to speak with a manager.  She was directed back to Mr. Turner.  She told him to stop calling and received no further calls from Defendant after that.

14.     Ms. Wilson then called her grandson, Plaintiff Quintel Wilson, and told him that she was getting calls claiming that he owed money.

15.     Mr. Wilson then called AFT and identified himself as the person AFT was trying to reach. The AFT agent said that he was calling about a debt regarding bailing Mr. Wilson's father out of jail.  Mr. Wilson explained that he father went back to jail.  The AFT agent replied, "You know you owe us this money."  Mr. Wilson then ended the call.

16.     A few minutes later the AFT representative called Mr. Wilson back and demanded to know why he is bailing out drug dealers.  He was very angry and told Mr. Wilson that he was not no good, just like his father, and was going to end up just like his father.  He then told Mr. Wilson that if he didn't have $3000 in a few days they are going to come and put Mr. Wilson in jail. The AFT agent then told Mr. Wilson that he knows where he lives.

17.     A little while later the same day, Mr. Wilson contacted his father and together they called the AFT agent back to explain that the bail had been revoked and they did not believe any money was owed.  The agent then replied that they were lying and told Mr. Wilson's father that they were going to lock Mr. Wilson up.  The AFT agent then refereed to them as drug dealers and also accused Mr. Wilson's little brother, who had no involvement with this, of being a drug dealer.  The AFT agent then said again that they were liars and that he was going to take them to jail.

5

18.     A few minutes later the AFT agent called Mr. Wilson again and said he was tired of playing games and was going to come and lock Mr. Wilson up.  Mr. Wilson replied that he could not afford to pay him.  The AFT agent stated that he was going to have a warrant issued for his arrest.

19.     Mr. Wilson became so upset that he contacted an attorney because he was worried about being arrested and put in jail.

20.     The next day Mr. Wilson and his attorney called AFT and AFT repeated that under statutes he can call a commissioner and he can hold Mr. Wilson until he pays the bond.

21.     The next day the AFT agent called Mr. Wilson again, despite that he was represented by counsel, and told Mr. Wilson that although he as trying to work with Mr. Wilson, Mr. Wilson "knows the outcome" if he doesn't cooperate.

22.     After that Mr. Wilson stopped speaking directly with AFT.  However, for the next several months AFT continued to call Mr. Wilson repeatedly.

23.     Failure to pay a debt cannot result in jail.

24.     Limitations on the debt have passed and therefore Defendants cannot collect.

25.     Defendants have never filed suit against any debtor in the State of Maryland

26.     It is Plaintiffs' contention that Defendants systematically and regularly use illegal bullying tactics to force people to pay debts which may be beyond limitations and for which they have no intention of filing suit.

27.     As a result of the alleged actions stated above Plaintiffs suffered stress,

headaches, nausea, sleep disorders, lack of concentration and embarrassment.

## V.     CLAIMS

### COUNT ONE – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

28.     Plaintiffs incorporate all prior paragraphs.

29.     Defendants are all debt collectors. Individually and as agent of AFT, they violated the Fair Debt Collection Practices Act ("FDCPA").  These Defendants' violations include, but are not limited to the following:

a.  Defendants violated 15 U.S.C. § 1692e(4) by representing that nonpayment of the debt will result in arrest or imprisonment.

b.  Defendants violated 15 U.S.C. § 1692c(a)(2) by communicating directly with Quintel Wilson knowing that he was represented by counsel.

c.  Defendants violated 15 U.S.C. § 1692b by communicating directly with Plaintiff Quintel Wilson's grandmother about the debt.

d.  Defendants violated 15 U.S.C. § 1692d by harassing, oppressing and abusing Plaintiffs for the reasons set forth above, including calling them liars and other names, stating that they and their family members are no good, and threatening arrest.

e.  Defendants violated 15 U.S.C. § 1692e(5) by threatening to take action (criminal arrest and imprisonment) which cannot legally be taken or is not intended to be taken.

f.  Defendants 15 U.S.C. § 1692e(7) by making the false representation

that Plaintiff committed a crime in order to disgrace Plaintiff.

g.  Defendants violated 15 U.S.C. § 1692e(10) by making false

representations regarding the debt being owed, and the criminal

ramifications for non-payment.

h.  Defendants violated 15 U.S.C. § 1692e(11) by failing to send the

proper written communication disclosing that they were debt collectors

attempting to collect a debt and that any information obtained will be

used for that purpose.

i.  Defendants violated 15 U.S.C. § 1692f(1) by attempting to collect

money not expressly authorized by the agreement creating the debt or

permitted by law.

j.  Defendants violated 15 U.S.C. § 1692g(a) by failing to send the

required written notice within 5 days after calling Plaintiff.

k.  The FDCPA may have been violated in other ways.

30.     As a result of the above violations of the FDCPA, the Defendants are

liable to the Plaintiffs for declaratory judgment that Defendants' conduct violated the

FDCPA, and the Plaintiffs' actual damages, statutory damages, and costs and attorney

fees.

31.     Plaintiffs did suffer actual damages, including stress, headaches, nausea,

sleep disorders, lack of concentration, humiliation and embarrassment as well as

economic losses.

WHEREFORE, each Plaintiff demands judgment against Defendants jointly and

severally, in the amount of $100,000 plus statutory damages, court costs and attorney fees.

### COUNT TWO – VIOLATION OF MARYLAND'S
### CONSUMER DEBT COLLECTION ACT

32.     Plaintiffs incorporate all prior paragraphs.

33.     All Defendants violated MD. CODE ANN., COM. LAW ART. §14-201 *et seq.*
Defendants' violation of this act include, but are not limited to the following:

    a.   Defendants violated CL 14-202(2) by threatening criminal

        prosecution.

    b.   Defendants violated CL 14-202(5) by disclosing to a person other than

        the debtor or his spouse, or if the debtor is a minor, his parent,

        information which affects the debtor's reputation with knowledge that

        the other person does not have a legitimate business need for the

        information.

    c.   Defendants violated CL 14-202(6) by continuing to communicate with

        Plaintiffs frequently and in manners expected to abuse or harass them,

        as set forth above.

    d.   Defendants violated CL 14-202(7) by using grossly abusive language

        in communicating with the debtor or a person related to him, for the

        reasons set forth above.

    e.   Defendants may have violated this statute in other ways to be

        determined.

34.     As a result of these violations, Plaintiffs suffered damages, including
emotional damages, stress, headaches, nausea, sleep disorders, lack of concentration and
embarrassment.  Plaintiff may have other damages to be determined.

35.     WHEREFORE, each Plaintiff demands judgment against Defendants, jointly and severally, in the amount of $100,000 plus court costs and attorney fees.

## COUNT III – VIOLATION OF MARYLAND'S CONSUMER PROTECTION ACT

36.     Plaintiffs incorporate all prior paragraphs.

37.     Maryland's Consumer Protection Act states a violation of the Consumer Debt Collection Act is also a violation of the Maryland Consumer Protection Act. CL § 13-301(14)(iii).

38.     Defendants, as set forth above, (including, but not limited to, threatening criminal prosecution, contacting and harassing both Plaintiff) violated this provision, and as a direct result Plaintiffs suffered damages, including stress, embarrassment and humiliation.

39.     In addition, Defendants violated other parts of the Consumer Protection Act, including but not limited to violation of § 13-301(1) (false, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers) and § 13-301(3) (failure to state a material fact if the failure deceives or tends to deceive) by threatening criminal prosecution, failing to tell Plaintiff that he could only be civilly liable, and may have violated this statute in other ways.

40.     As a result of Defendants' violations of these statutes Plaintiffs suffered damages, including stress, headaches, nausea, sleep disorders, lack of concentration and embarrassment.

WHEREFORE, each Plaintiff demands judgment against each Defendant, jointly and

severally, in the amount of $100,000 plus court costs and attorney fees.

Respectfully Submitted,

_/s/Jane Santoni_____
Jane Santoni
Federal Bar #05303
Williams & Santoni, LLP
401 Washington Avenue, Suite 200
Towson, Maryland 21204
(410) 938-8666
*Attorney for Plaintiffs*

PRAYER FOR JURY TRIAL

Plaintiffs request a jury trial in the above captioned action.

Respectfully Submitted,


  /s/Jane Santoni_____
Jane Santoni
Federal Bar #05303
Williams & Santoni, LLP
401 Washington Avenue, Suite 200
Towson, Maryland 21204
(410) 938-8666
*Attorney for Plaintiffs*