**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|                                         |   |                          |
|-----------------------------------------|---|--------------------------|
| ROSALEE WILSON, et al.,                 | * |                          |
|           Plaintiffs,                   | * |                          |
|                                         |   |                          |
|           v.                            | * | Civil No. ELH-13-3497    |
|                                         |   |                          |
| MICHAEL TURNER, et al.                  | * |                          |
|           Defendants.                   |   |                          |
|                                         | * |                          |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPORT AND RECOMMENDATION

The above-referenced case was referred to the undersigned for review of plaintiffs' Motion for Default Judgment and to make recommendations concerning damages, pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302.  (ECF No. 76.)  Currently pending is plaintiffs' Motion for Default Judgment ("Motion").  (ECF No. 75.)  Plaintiffs have also submitted a Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment ("Memorandum") (ECF No. 78), a Memorandum Outlining Services and Fees Sought ("Fee Memorandum") (ECF No. 82), and a supplemental Letter (ECF No. 83).  Defendants have not filed any response.  A hearing to determine the appropriate damages award was held on January 20, 2016.  (ECF No. 84.)  For the reasons discussed herein, I respectfully recommend that plaintiffs' Motion (ECF No. 75) be GRANTED and that relief be awarded as set forth herein.

## I.      STANDARD FOR ENTRY OF DEFAULT JUDGMENT

In reviewing a motion for default judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability.  Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780-81 (4th Cir. 2001).  It remains for the court, however, to determine whether these

unchallenged factual allegations constitute a legitimate cause of action.  Id.  If the court determines that liability is established, the court must then determine the appropriate amount of damages.  Id.  The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations.  See, e.g., Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 154-155 (2d Cir. 1999).

## II.    PROCEDURAL BACKGROUND

Plaintiffs' original complaint was filed on November 20, 2013.  (ECF No. 1.)   An amended complaint was filed on March 24, 2014.  (ECF No. 7.)  The now operative pleading is plaintiffs' Second Amended Complaint ("Complaint"), filed on July 25, 2014.  (ECF No. 28.) On November 7, 2014, the clerk of court entered separate Orders of Default against defendants Paul Edherue and Crawford Johnson's Bail Bonds, Inc. (ECF Nos. 49, 50.)  On October 6, 2015, the court entered an Order of Default against America's Financial Trust, LLC.  (ECF No. 74.)

Plaintiffs filed the pending Motion on November 20, 2015.[1]  On December 3, I directed plaintiffs to file a supplemental memorandum addressing whether the factual allegations in their complaint constitute a legitimate cause of action.  (ECF No. 77.)  Plaintiffs filed a Memorandum in support of their Motion on December 18, 2015.  (ECF No. 78.)  At the court's request (ECF No. 81), plaintiffs filed a Memorandum Outlining Services and Fees Sought.  (ECF No. 82.)  On January 20, 2016, I held a hearing to determine the appropriate damages award.[2]  (ECF No. 84.)

---

[1] Plaintiffs' previous Motions for Default Judgment (ECF Nos. 14, 55, 56) were denied without prejudice, as prematurely filed.  (ECF Nos. 41, 67.)

[2] While notice of the hearing was sent to defendants at their last known addresses, defendants were neither present nor represented at the hearing.  A man who identified himself as Chigozie Nnabue, however, did appear in the courtroom about twenty minutes into the hearing.  "Mr. Nnabue" stated that he was the registered agent for defendant America's Financial Trust, LLC.  Mr. Nnabue also indicated that he was not an attorney.  In light of Local Rule 101.1(a), I informed Mr. Nnabue that he could not represent America's Financial Trust at the proceeding, but that he could observe from the Gallery if he wished to do so.

III.    **DISCUSSION**

A.  **Defendants' Liability**

I have reviewed plaintiffs' Second Amended Complaint (ECF No. 28) and Memorandum (ECF No. 78), and, accepting as true Plaintiff's well-pleaded factual allegations, find that plaintiffs have stated legitimate causes of action based on violations of the Fair Debt Collection Practices Act (15 U.S.C § 1692, et seq.) ("FDCPA"), the Maryland Consumer Debt Collection Act (Md. Code, Com. Law Art. § 14-201, et seq.) ("MCDCA"), and the Maryland Consumer Protection Act (Md. Code, Com. Law Art. § 13-301 et seq.) ("MCPA").  A common set of facts, as stated below, underlies each of the causes of action alleged.

Crawford Johnson's Bail Bonds, Inc. ("CJBB") is a bail bondsman in Anne Arundel County, Maryland.  (ECF No. 28 at ¶ 7.)  In June 2010, CJBB issued a bail bond to plaintiff Quintel Wilson, Sr. for Mr. Wilson's father, Miles Grady.[3]  (Id. at ¶ 8.)  When bail in Mr. Grady's case was revoked, Mr. Wilson believed that no further payment under the bond agreement was required.  (Id.)  CJBB later employed America's Financial Trust, LLC ("AFT") to collect on the bond issued to Mr. Wilson.  (Id. at ¶ 9.)  In the summer of 2013, AFT representative Paul O. Edherue[4] contacted plaintiff Rosalee Wilson by telephone to attempt to

---

During my brief colloquy with Mr. Nnabue, Mr. Nnabue presented what appeared to be the notice of the hearing which had been sent by the court to defendant America's Financial Trust.  Mr. Nnabue also represented that defendant Paul Edherue had moved out of Maryland and challenged plaintiffs' ability to properly serve process on Mr. Edherue.  Counsel for plaintiffs correctly objected to Mr. Nnabue's appearance.  As Mr. Nnabue is not permitted to appear on behalf of any defendant in this case, his representations are of no consequence to the recommendations contained herein.

[3] During the hearing, Mr. Wilson stated that his mother died when Mr. Wilson was a child, and that Mr. Wilson was raised by his maternal grandmother, Rosalee Wilson.

[4] Mr. Edherue identified himself over the phone as "Michael Turner."  In plaintiffs' original complaint, they named "Michael Turner" as a defendant.  (ECF No. 1.)  Plaintiffs subsequently learned that "Michael Turner" was Mr. Edherue's pseudonym and, accordingly, amended the complaint to name Paul O. Edherue as a defendant.  (ECF No. 28.)  Hereinafter, I will refer only to Mr. Edherue and not the fictitious "Michael Turner."

collect on the alleged debt from the bail bond agreement.  (Id. at ¶ 10-16.)  During the series of telephone calls that followed, plaintiffs allege, inter alia, that Mr. Edherue and other AFT employees made improper communications in connection with the debt collection, harassed and verbally abused plaintiffs during their communications, and made false and/or misleading representations to plaintiffs regarding the debt.  (Id.)

### 1. Crawford Johnson's Bail Bonds (CJBB)

As a threshold matter, plaintiffs do not allege that CJBB violated the FDCPA.  (ECF No. 28 at ¶¶ 29-32.)  Default judgment as to CJBB on the FDCPA claim is thus improper.

Plaintiffs allege, however, that CJBB may be liable under the MCDCA and the MCPA.  (ECF No. 28 at ¶¶ 33-42.)  As to their MCDCA claim, plaintiffs allege that CJBB should be held liable under an agency theory:  "[CJBB] is prima facie liable for the acts of its agent done in the general course of business authorized by him.  This is true even when the principle's [sic] only involvement in the illegal conduct was through its subsidiary. As Defendant Crawford Johns [sic] Bail Bonds hired Defendant AFT to collect this debt, it is liable for Defendant AFT's acts." (ECF No. 28 at ¶ 34.)

While Maryland courts have not addressed specifically whether a party may be held liable under the MCDCA based on a principal-agent relationship, general principles of agency law are well established under Maryland law.  "Agency is the fiduciary relation which results from the manifestation of consent by one person [the principal] to another [the agent] that the other shall act on his behalf and subject to his control and consent by the other so to act."  Ins. Co. of N. Am. v. Miller, 362 Md. 361, 765 A.2d 587, 593 (2001).  In a case seeking damages under the FDCPA, MCDCA, and MCPA (among other causes of action), this court declined to hold Fannie Mae liable for the acts of a mortgage servicer under a principal-agent theory.  Allen

v. Bank of Am., N.A., 933 F. Supp. 2d 716, 728 (D. Md. 2013).  While the court in Allen did not address specifically whether a creditor (here, CJBB) may be held liable on an agency theory for the acts of the debt collector it employed, its holding regarding the non-existence of an agency relationship between the creditor and mortgage servicer is closely analogous to the situation at issue in this case.  As plaintiffs have in no way alleged that CJBB participated, controlled, or was "in any way directly involved with the wrongdoing alleged," it would be improper to hold CJBB liable as AFT's principal.  See Allen, 933 F. Supp. 2d at 728.  But see Fontell v. Hassett, 870 F. Supp. 2d 395, 413 (D. Md. 2012) (stating in dicta that Maryland courts have not addressed whether a client may be held liable for the MCDCA violations of its attorneys under an agency theory, but noting that attorneys are agents of their clients).

Plaintiffs' argument that CJBB may be directly liable as a "collector" under the MCDCA is similarly unavailing.  In their Letter (ECF No. 83), plaintiffs rely on the Maryland Court of Appeals' decision in Allstate Lien & Recovery Corp. v. Stansbury.  445 Md. 187, 199, 126 A.3d 40, 47 (2015).  In Stansbury, the Court of Appeals (and the Court of Special Appeals, below) affirmed a jury verdict which found that the original creditor/lien holder, Russel Auto Imports, LLC, had violated the MCDCA by including lien enforcement fees in the lien itself.  Id., 445 Md. at 206, 126 A.3d at 51.  The Court of Appeals held that the Garageman's Lien Statute, Md. Code, Com. Law, § 16–202, did not authorize such "front loading" of lien enforcement fees. Thus, by adding the enforcement fees to the lien itself, the creditor violated § 14–202 of the MCDCA by "attempting to enforce a right that did not exist." Allstate Lien & Recovery Corp. v. Stansbury, 219 Md. App. 575, 591, 101 A.3d 520, 529 (2014) aff'd sub nom. Allstate Lien & Recovery Corp. v. Stansbury, 445 Md. 187, 126 A.3d 40 (2015).  Russel remained liable even

though it had contracted with Allstate Lien & Recovery to collect on the debt and enforce the lien.

Even if <u>Stansbury</u> suggests that original creditors may be liable as "collectors" under the MCDCA, plaintiffs have not alleged sufficient facts to show that CJBB's actions violated the MCDCA. The Complaint states only that, "[CJBB] hired AFT to collect this alleged debt and at all times AFT was acting as agent, servant, and/or employee of [CJBB] in its dealings with Plaintiffs as set forth in this Complaint." (ECF No. 28 at ¶ 9.) Unlike the plaintiff in <u>Stansbury</u>, where plaintiffs disputed part of the amount owed to the creditor, plaintiffs here have not alleged that CJBB was not entitled to collect on the bail bond issued to Mr. Wilson. Rather, plaintiffs allege only that, "Mr. Wilson believed that because bail was never paid he owed no further money under the [bail bond] agreement." (<u>Id</u>. at ¶ 8.) Plaintiffs have, moreover, failed to allege any facts related to when or how CJBB hired AFT to collect the alleged debt—facts which might show whether CJBB sought to "enforce a right that did not exist" in violation of the MCDCA. Finally, none of plaintiffs' allegations of misconduct in attempting to collect the debt pertain to CJBB itself: the "bad" actors were AFT and/or Edherue. Thus, even if CJBB is a "creditor" under the MCDCA, plaintiffs have failed to allege liability on its behalf.

As plaintiffs' MCPA claim as to CJBB is premised on that statute's <u>per se</u> rule,[5] so too must the MCPA claim fail where no liability has been established under the MCDCA.

Consequently, default judgment against CJBB is improper on all counts.

## 2. FDCPA

To state a claim under the FDCPA, plaintiffs must allege that: (1) they were the object of collection activity arising from consumer debt; (2) defendants are debt collectors as defined by the FDCPA; and (3) defendants engaged in an act or omission prohibited by the FDCPA.

---

[5] <u>See</u> section III.A.4, below.

Stewart v. Bierman, 859 F. Supp. 2d. 754, 759 (D. Md. 2012); see also Conteh v. Shamrock Cmty. Ass'n, Inc., 2015 WL 5177752, at *3 (D. Md. Sept. 3, 2015).  In their Complaint and Memorandum, plaintiffs have sufficiently alleged that they were the object of consumer debt collection activity and that defendants AFT and Edherue[6] are "debt collectors" within the meaning of the FDCPA.  15 U.S.C. § 1692a.  (ECF No. 28 at ¶¶ 3-7; ECF No. 78 at 4-6.)

With respect to the third element, plaintiffs allege that defendants Edherue and AFT engaged in a series of acts and omissions in violation of §1692b, §1692c, §1692d, §1692e, §1692f, and §1692g.  (ECF No. 28 at ¶ 30.)  Plaintiffs' allegation that defendants communicated with Rosalee Wilson regarding her grandson Quintel Wilson's alleged debt constitutes a plausible claim under §1692b, which prohibits debt collectors from discussing the debt with persons other than the debtor.  (Id. at ¶ 30(c).)  Similarly, plaintiffs' allegation that defendants, while aware that Mr. Wilson was represented by counsel, communicated directly with Quintel Wilson about the alleged debt constitutes a violation of §1692c(a)(2).  (Id. at ¶ 30(b).)  Plaintiffs state a cause of action under §1692d by their allegation that defendants harassed, oppressed, and abused plaintiffs by "calling them liars and other names, stating that they and their family members are no good, and threatening arrest."  (Id. at ¶ 30(d).)  In addition, plaintiffs' allegation that defendants threatened improper legal action and made false representations about the debt owed states a claim under §1692e.  (Id. at ¶ 30(e), (f), (g).)  Plaintiffs also allege that defendants violated §1692f by using unfair and unconscionable means to attempt to collect the alleged debt. (Id. at ¶ 30(i); ECF No. 78 at 10-11.)  In support of this claim, Ms. Wilson testified that the AFT

---

[6] See Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 777-79 (E.D.N.C. 2011) (finding that individual employees of a debt collection agency may also be held liable for violations of the FDCPA).  See also Federal Trade Commission, Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097, 50102 (Dec. 13, 1988) (defining "debt collector" to include "[e]mployees of a debt collection business, including a corporation, partnership, or other entity whose business is the collection of debts owned another").

representative said that "[Ms. Wilson] was no good," that "[Ms. Wilson] was 'not a good Christian,'" and threatened to send the police to her house to collect on the debt.  (Testimony of Rosalee Wilson, Jan. 20, 2016 Hearing, ECF No. 84.)  During the calls to Mr. Wilson, moreover, the AFT representative referred to Mr. Wilson as a "drug dealer" and threatened to have Mr. Wilson "locked up."  (Testimony of Quintel Wilson, Jan. 20, 2016 Hearing, ECF No. 84.)  Finally, plaintiffs' allegation that defendants failed to provide requisite written notice regarding the alleged debt states a cause of action under §1692g.  (ECF No. 28 at ¶ 30(j).  For the foregoing reasons, plaintiffs are entitled to an entry of default judgment against defendants Edherue and AFT on their FDCPA claim.

### 3. MCDCA

The MCDCA, codified at Md. Code, Com. Law § 14–201, et seq., "protects consumers against certain threatening and underhanded methods used by debt collectors in attempting to recover on delinquent accounts." Spencer v. Hendersen-Webb, Inc., 81 F. Supp. 2d 582, 594 (D. Md. 1999).  Plaintiffs allege that defendants AFT and Edherue violated various sections of the MCDCA, including: § 14-202(2), by threatening criminal prosecution of plaintiffs; § 14-202(5), by disclosing to a person other than the debtor information regarding the alleged debt; § 14-202(6), by communicating with plaintiffs in an abusive and harassing manner; and § 14-202(7), by using grossly abusive language in communicating with plaintiffs.  (ECF No. 28 at ¶ 35.) Accepting as true the well-pleaded allegations in the Complaint, plaintiffs have sufficiently stated a claim under the MCDCA, and entry of default judgment against defendants AFT and Edherue is appropriate.[7]

---

[7] As explained in section III.A.1, above, entry of default judgment as to CJBB would be improper.

### 4. __MCPA__

Plaintiffs also assert a claim against defendants under the MCPA, which proscribes "[u]nfair or deceptive trade practices." Md. Code Ann., Com. Law § 13–301, et seq.  A party is per se liable under the MCPA for any violation of the MCDCA.  Md. Code Ann., Com. Law § 13–301(14)(iii).  See Peckey v. Bank of Am., N.A., 2015 WL 1622967, at *6 (D. Md. Apr. 10, 2015).  Plaintiffs' claim under the MCPA is predicated on this per se rule.  (ECF No. 28 at ¶ 39.) Having found that plaintiffs are entitled to judgment against defendants AFT and Edherue on their MCDCA claim, so, too, do I conclude that plaintiffs have stated a claim under the MCPA.

Thus, plaintiffs have asserted factual allegations that constitute a legitimate cause of action against defendants AFT and Edherue for violations of the FDCPA, MDCDCA, and MCPA, and entry of default judgment is proper.

### B.  __Damages__

Having determined that plaintiffs have proven defendants' liability, the undersigned now undertakes an independent determination of the damages to which plaintiffs are entitled.  Under the FDCPA, plaintiffs may recover damages for any actual injuries sustained, as well as up to $1,000.00 in statutory damages, as determined by the court.[8]  15 U.S.C. § 1692k.  In determining the appropriate amount of statutory damages to be awarded in a particular case, a court shall consider, among other factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1).  "The maximum statutory damage award is only assessed in cases where there [have] been repetitive, egregious FDCPA violations and even in such cases, the statutory awards are often less than $1000."  Liversage v. Nationwide Debt Mgmt. Sols.,

---

[8] The state law causes of action alleged also allow plaintiffs to recover actual damages and attorney's fees.  See Md. Code, Com. Law § 14-203; Md. Code, Com. Law § 13-408.  As plaintiffs may collect such damages and fees only once, I need not address plaintiffs' damages under the Maryland statutes.

LLC, No. ELH-15-1266, 2016 WL 106301, at *3 (D. Md. Jan. 11, 2016) (quoting Ford v. Consigned Debts & Collections, Inc., 2010 WL 5392643 at *5 (D.N.J. Dec. 21, 2010)).

Here, plaintiffs' Complaint asks for $100,000.00 each in damages for the emotional distress caused by defendants' conduct.  (ECF No. 28 at 9-11.)  At the hearing, however, plaintiffs requested $10,000.00 in damages for Mr. Wilson and $5,000 in damages for Ms. Wilson.  (ECF No. 84.)  Although plaintiffs have sufficiently alleged and are therefore entitled to a monetary award, I recommend a reduced figure in light of the limited injuries actually sustained.

### 1.  Plaintiff Rosalee Wilson

At the hearing, plaintiff Rosalee Wilson testified that she is a seventy-one year old great-grandmother and retiree.  (Testimony of Rosalee Wilson, Jan. 20, 2016 Hearing, ECF No. 84.) Ms. Wilson stated that she resides in Talbot County, Maryland and that she worked as a school bus driver for the Talbot County public school system for thirty years.  (Id.)  According to her testimony, Ms. Wilson took responsibility for raising her grandson, co-plaintiff Quintel Wilson, after her daughter's death; Ms. Wilson maintains a close relationship with her grandson.  (Id.)

Ms. Wilson's alleged injuries were caused by three telephone calls with AFT representative Paul Edherue to Ms. Wilson on one day in September of 2013 regarding her grandson Quintel Wilson's alleged debt to AFT.[9]  (ECF No. 28 at ¶¶ 32, 36, 40.)  During these calls, Mr. Edherue spoke to Ms. Wilson in a rude and harassing manner in connection with the debt, accusing her of "not being a good Christian" and of harboring a drug dealer in her home. (Testimony of Rosalee Wilson, Jan. 20, 2016 Hearing, ECF No. 84.)  Mr. Edherue also threatened to send the police to Ms. Wilson's home to force payment of the alleged debt.  (Id.)

---

[9] During the hearing, Ms. Wilson testified that she was called twice by Mr. Edherue and called Mr. Edherue back once.  (Testimony of Rosalee Wilson, Jan. 20, 2016 Hearing, ECF No. 84.)

This prompted Ms. Wilson to call AFT to try to address and halt Mr. Edherue from carrying out his threat. (Id.)  Ms. Wilson testified that the phone calls, "really got on [her] nerves" and caused her anxiety, headaches, and an inability to eat for that one day.[10] (Id.)  Nonetheless, Ms. Wilson was able to return to work on the same day, within hours of receiving the harassing phone calls, and did not testify to any ongoing injury or condition resulting from the calls. (Id.)

In light of the limited injuries sustained by Ms. Wilson, I recommend an award of $500.00 in actual damages.  This award is consistent with cases alleging similar violations of the FDCPA.  See Thomas v. Smith, Dean & Associates, Inc., No. ELH-10-CV-3441, 2011 WL 2730787, at *4 (D. Md. July 12, 2011) (collecting cases) report and recommendation adopted, No. CIV.A. ELH-10-3441, 2011 WL 3567043 (D. Md. Aug. 10, 2011); see also Marchman v. Credit Solutions Corp., 2011 WL 1560647 (M.D. Fla. April 5, 2011) (recommending an award of $100.00 in statutory damages and no actual damages where plaintiff received two telephone calls including a threat to contact Plaintiff's employer, and claimed loss of sleep, worry, withdrawal, and depression).  In addition, I recommend an award of statutory damages in the amount of $100.00.  While Mr. Edherue's conduct was undoubtedly offensive, it was neither so frequent nor persistent so as to warrant a more substantial award.  See Carroll v. Paul Law Office, PLLC, No. CIV.A. DKC 12-2041, 2013 WL 4008873, at *3 (D. Md. Aug. 2, 2013) (awarding $50.00 in statutory damages where plaintiff received one phone call in violation of the statute).

## 2.  Plaintiff Quintel Wilson

At the hearing, plaintiff Quintel Wilson testified that he is married, thirty-two years old, and the father of four children.  (Testimony of Quintel Wilson, Jan. 20, 2016 Hearing, ECF No.

---

[10] Ms. Wilson testified that she regularly took blood pressure medication, but did not allege that her need for the medication was caused by defendants' actions.  (Testimony of Rosalee Wilson, Jan. 20, 2016 Hearing, ECF No. 84.)

84.)  Mr. Wilson and his family live in Virginia Beach, Virginia.  (Id.)  Mr. Wilson testified that he has some college education and currently works as a tractor trailer driver.  (Id.)

Mr. Wilson testified that his injuries were caused by several offensive, harassing, and threatening telephone calls he had with AFT representative Paul Edherue over a one week period in September 2013.  (ECF No. 28 at ¶¶ 32, 36, 40.)  Mr. Wilson testified that Mr. Edherue called him "no good" and a "drug dealer" while attempting to compel payment of the alleged debt. (Testimony of Quintel Wilson, Jan. 20, 2016 Hearing, ECF No. 84.)  Mr. Edherue represented himself as an "officer of the court" and threatened to instruct the sheriff's department to "have [Mr. Wilson] locked up" if he did not pay $1,000 within one week.  (Id.)  Mr. Wilson testified that he asked Mr. Edherue whether they could work out a plan to allow deferred payment of the debt.  (Id.)  Mr. Wilson further testified that the threat of arrest was particularly distressing and worrying in light of Mr. Wilson's having been incarcerated recently.  (Id.)  In addition, Mr. Wilson testified that Mr. Edherue called him back several times, but that Mr. Wilson did not answer the phone.  (Id.)

Mr. Wilson's inability to pay the alleged debt, coupled with his fear of returning to prison and being forced to leave his family, caused Mr. Wilson significant stress for approximately one week.  (Testimony of Quintel Wilson, Jan. 20, 2016 Hearing, ECF No. 84.)  Mr. Wilson testified that during the time that Mr. Edherue contacted him, Mr. Wilson was unable to sleep or eat and suffered from headaches.  (Id.)  Mr. Wilson also expended significant time and effort during that week trying to find a way to pay the alleged debt owed to AFT.  (Id.)  Ultimately, Mr. Wilson sought legal counsel,[11] who informed him that he was not liable for the debt and who contacted Mr. Edherue and instructed him to cease his harassing conduct.[12]  (Id.)

---

[11] Mr. Wilson identified this attorney as "Nicole" and stated that she had previously represented him in criminal proceedings.  (Testimony of Quintel Wilson, January 20, 2016 Hearing, ECF No. 84.)  "Nicole" has not been

Based upon these contacts by the AFT representative, which, although more frequent than those with Ms. Wilson, were still of limited duration, I recommend an award of $1,500.00 in actual damages to Mr. Wilson. Moreover, given that Mr. Edherue's wrongful and offensive conduct persisted for approximately one week, I recommend an award of $500.00 in statutory damages. This award is consistent with those rendered in cases alleging similar violations of the FDCPA. See Thomas, 2011 WL 2730787, at *4 (collecting cases with similar awards and awarding $1,500.00 in actual damages and $500.00 in statutory damages where plaintiff suffered three days of stress and humiliation from defendant's wrongful phone calls to plaintiff and her employer regarding plaintiff's debt).[13]

## C. Attorney's Fees and Costs

In a successful action under the FDCPA and the state law causes of action alleged, the plaintiffs are entitled to an award of reasonable attorney's fees and costs. 15 U.S.C. § 1692k(a)(3). See Thomas, 2011 WL 2730787, at *6 (citing Carroll v. Wolpoff & Abramson, 53 F.3d 626, 628 (4th Cir.1995)). Typical awards of attorney's fees for cases brought under the FDCPA and related state consumer protection statutes have been "in the general range of $2100.00--$4300.00 to compensate for total attorney hours ranging from 13-21 hours worked." Thomas, 2011 WL 2730787 at *7. Here, plaintiffs request $20,020.00 in attorney's fees and

---

involved in the instant proceedings, and plaintiffs do not seek any attorney's fees they may have paid "Nicole" for her services.

[12] Plaintiffs allege—and the court accepts as true—that Mr. Edherue made one final phone call after Mr. Wilson's attorney contacted him. (ECF No. 28 at 8.)

[13] While the factual basis differs, the proposed award to Mr. Wilson is consistent with that granted in Thomas because of the duration of defendant's misconduct and the type of stress which defendant caused. The damages award in Thomas is instructive in this case. Although the Thomas defendants engaged in more egregious conduct by contacting plaintiff's employer as compared to the instant case, the duration of the conduct here lasted longer, and the threat of jail had an unique impact on Mr. Wilson.

$491.50 in costs—five to ten times the typical fee award in FDCPA cases.[14]   (ECF No. 82 at 2-3.)

In order to properly determine an award of reasonable attorneys' fees, the court must calculate the "lodestar amount" by multiplying the number of hours reasonably expended times a reasonable hourly rate.  Blum v. Stenson, 465 U.S. 886, 888 (1984); Grissom v. Mills Corp., 549 F.3d 313, 320-21 (4th Cir. 2008).  The plaintiff must demonstrate that "the number of hours for which [it] seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary."  Victor Stanley, Inc. v. Creative Pipe, Inc., No. MJG-06-2662, 2011 WL 2552472, at *3 (D. Md. Jan. 24, 2011) (internal quotation marks omitted).

At the court's request, plaintiffs submitted a Fee Memorandum in support of the attorney's fees and costs requested.  (ECF No. 82.)  Plaintiffs request for fees is somewhat convoluted.  Consequently, the undersigned was required to scrutinize the time sheets submitted and to calculate the number of billable hours worked.  Attorney Jane Santoni performed 34.3 hours of work performed at an hourly rate of $400.00, for which she seeks reimbursement.[15]  Ms. Santoni was admitted to the bar in 1986, and her $400.00 hourly rate requested is within the

---

[14] While plaintiffs' stated request for attorney's fees is for $20,020.00, as explained in footnote 15, below, plaintiffs' total request should be reduced to $18,020.00 based on the miscalculation of Ms. Santoni's hours of billable work performed (34.3 instead of 39.3 hours, making the request for Ms. Santoni's time $13,720.00 instead of $15,720.00).

[15] Plaintiffs request a fee of $15,720.00 for the work Ms. Santoni performed on the case.  At an hourly rate of $400.00, the fee requested reflects 39.3 hours of work.

   The Fee Memorandum and accompanying time sheets indicate, however, that Ms. Santoni performed a total of 42.7 hours of work on this case.  The Fee Memorandum also states that plaintiffs have "deducted any time spent in responding to the [original] Motion to Dismiss.  Likewise, a Motion for [Default] Judgment was filed which was later determined to be premature, so all time spent on the original Motion for Judgment has been withdrawn." (ECF No. 82 at 2.)

   Ms. Santoni's time sheets include 4.4 hours of work which was 'billed' at an $0.00 hourly rate.  (ECF No. 82-1 at 2.)  This non-billable time presumably reflects some of the deductions that plaintiffs describe in the Fee Memorandum.  Deducting the 4.4 non-billable hours from Ms. Santoni's 42.7 total hours of work, Ms. Santoni performed 38.3 billable hours of work on this case.  The discrepancy between the 39.3 hours requested and the 38.3 hours appears to be a mathematical error.

   Also consistent with plaintiffs' assertion in the Fee Memorandum, 4 hours of work performed on March 20-21, 2014 has been crossed out from Ms. Santoni's time sheet.  (ECF No. 82-1 at 6.)  Deducting this additional 4 hours, Ms. Santoni performed 34.3 billable hours of work.  At an hourly rate of $400.00, Ms. Santoni's requested fees amount at most to $13,720.00.

guidelines set forth in the Local Rules.   See Loc. R. App.'x B.3.   In addition, the Fee Memorandum states that attorney Elsa Clausen performed 20.2 billable hours of work at an hourly rate of $200.00.[16]   Ms. Clausen was admitted to the bar in 2012, and her $200.00 hourly rate requested is also within the Local Rules' guidelines.   See id.   Finally, plaintiffs request an additional $260.00 for the 1.3 hours of work performed by attorney Chelsea Ortega.[17]   Ms. Ortega was admitted to the bar in 2011, and her $200.00 hourly rate requested is within the court's guidelines.   See id.   Plaintiffs' request for attorney's fees thus totals $18,020.00.   (ECF No. 82 at 10.)

The instant case differs from the typical default judgment case insofar as defendant AFT did initially participate in the case.   (See ECF Nos. 5, 18, 24, and 43.)   Plaintiffs' original complaint was filed on November 20, 2013.   (ECF No. 1.)   Defendants Edherue and Crawford Johnson's Bail Bonds, Inc. never participated in the case, leading to the clerk's entry of separate Orders of Default against them on November 7, 2014. (ECF Nos. 49, 50.)   Defendant AFT continued to participate in the case until the spring of 2015, at which time its second attorney withdrew from the case.   (ECF No. 65.)   On August 6, 2015, Judge Hollander directed defendant AFT to show cause why default should not be entered against it.   (ECF No. 71.)   AFT did not respond to the court's order, and the clerk of court entered an Order of Default against AFT on October 6, 2015.   (ECF No. 74.)   These procedural meanderings help, in part, to explain why the

---

[16] A $0.00 hourly rate for 6.3 hours of work also appears on Ms. Clausen's time sheet.   Thus, while Ms. Clausen performed a total of 26.5 hours of work, 6.3 hours were 'billed' at $0.00 per hour, leaving 20.2 billable hours.   At her $200.00 hourly rate, 20.2 hours of billable work totals $4,040.00—precisely the amount requested in the Fee Memorandum.

[17] There is a discrepancy between plaintiffs' affidavit, which states that Ms. Ortega's hourly rate is $225.00, and Ms. Ortega's time sheet, which states that her hourly rate is $200.00.   (See ECF No. 82 at 2, ECF No. 82-3 at 2.)   As plaintiffs' request is for $260.00 for 1.3 hours of work, the $200.00 is the correct hourly rate.

attorney's fees requested by plaintiffs are so far in excess of the typical fee awards in cases premised on violations of the FDCPA and similar state consumer protection statutes.[18]

The procedural hurdles erected by defendants, however, do not fully justify the approximately 75 hours[19] of work performed by plaintiffs' counsel on this case. Plaintiffs have already deducted 14.7 hours (8.4 for Ms. Santoni, 6.3 for Ms. Clausen) from their fee request for time spent on work which was either premature or improvident.[20]   Nonetheless, plaintiffs' time- and resource-consuming efforts to effectuate service (see ECF Nos. 31, 37), their repeated failure to comply with the two-step procedure for obtaining a default judgment (see ECF Nos. 40, 46), unfamiliarity with the procedural limitations of the stated cause of action (see ECF No. 77 (explaining that plaintiffs' request for a jury trial on damages was not supported by law)), and their failure to properly substantiate their claims on the first attempt (resulting in the need for renewed motions and supplemental briefing) (see ECF Nos. 14, 55, 56, 77, and 83) indicate that the time expended by plaintiffs' counsel on this case exceeds what reasonably might be expected.

Since April of 2015, plaintiffs have been the sole participants in this case and have faced no opposition.[21]   Notwithstanding, counsel for plaintiffs spent at least 31 hours working on the

---

[18] As plaintiffs reasonably assert in the Fee Memorandum, "These fees would have been significantly less had Defendants not evaded service, used false names, and dissolved and re-formed, in what Plaintiffs assert were attempts to evade liability." (ECF No. 82 at 2-3.) On the other hand, it does not appear from the time sheets that plaintiffs' counsel had occasion to do much substantive work in litigating this case.

[19] This refers to the number of hours stated in time sheets and as projected in the Fee Memorandum. The time sheets attached to the Fee Memorandum indicate that Ms. Santoni spent 42.7 total (billable and non-billable) hours working on the case (plus an anticipated 5 hours for "preparation and attendance at the hearing" (ECF No. 82 at 2)), Ms. Clausen spent 26.5 hours working on the case, and Ms. Ortega spent 1.3 hours on the case. (ECF No. 82-1 at 4, 7; ECF No. 82-2 at 3; ECF No. 82-3 at 2.) Thus, the total number of hours is 75.5 (42.7 + 5 + 26.5 + 1.3).

[20] See footnote 15, above (citing ECF No. 82 at 2-3).

[21] Default was entered against defendants Edherue and CJBB on November 7, 2014. (ECF Nos. 49, 50.) While the clerk's Entry of Default against defendant AFT did not occur until October 6, 2015 (ECF No. 74), AFT last

16

case from late April 2015 to present.  The number of hours of work performed by plaintiffs thus exceeds the typical amount of time spent on an FDCPA case in a default posture by at least fifty percent.  See Thomas, 2011 WL 2730787 at *7 (stating that fee awards in typical FDCPA cases are based on 13-21 hours of attorney work).

Based upon my review of this case, an award of attorney's fees must include several reductions to account for excessive time spent by plaintiffs' counsel on certain activities.  First, attorney Jane Santoni spent 4 hours preparing the Fee Memorandum submitted to this court. (ECF No. 82-1 at 4.)  While Ms. Santoni had initially submitted a request for fees by email correspondence dated January 13, 2016, the information provided therein was confusing and non-responsive to the court's modest instruction that "counsel should submit records and documentation in support of such an award no later than one week before the hearing."  (ECF No. 79.)  Unable to decipher plaintiffs' initial request for attorney's fees, the court requested a "brief memorandum **outlining the services and the fees sought** consistent with Loc. R. 109.2(b)."  (ECF No. 81) (emphasis added.)  The Fee Memorandum which plaintiffs ultimately produced included an extensive chronicle of plaintiffs' qualifications and expertise—content which went far beyond the information actually requested.  Consequently, the time spent preparing the Fee Memorandum was excessive.  I will award attorney's fees only for the .1 hour plaintiffs spent on January 12, 2016 preparing their original response to the court's inquiry (ECF No. 82-1 at 4) and .5 hours (deducting 3.5 of the 4 hours) for time spent working on the Fee Memorandum.

Second, in August 2015, Ms. Santoni spent a reported 3.2 hours reviewing the case file and preparing a Status Report for the court.  (ECF No. 82-1 at 3.)  Plaintiffs' exceedingly brief

---

participated in this case in April of 2015, at which time AFT's second attorney withdrew her representation.  (ECF No. 65.)

Status Report was filed with the court on August 21, 2015.  (ECF No. 72.)  Even allowing for some time to review a case which Ms. Santoni had last worked on four months prior, I find that 3.2 hours to prepare the Status Report is excessive.  The report barely exceeds two pages, and roughly half of the text which appears therein consists of the court's standard questions—not plaintiffs' answers—for status reports.  As a result, I will award only .5 hours (deducting 2.7 of the 3.2 hours) for work spent working on the Status Report.

Third, I note that attorney Elsa Clausen, having already spent 2 hours preparing plaintiffs' Motion for Default Judgment, performed an additional 7.8 hours of work to respond to the court's request[22] for a supplemental memorandum explaining why "the factual allegations contained in its complaint constitute a legitimate cause of action."  (ECF No. 82-2 at 3.)  These matters should have been amply addressed in the original Motion (ECF No. 75), but were not.[23] As it is evident that Ms. Clausen was working under the close supervision of Ms. Santoni in these endeavors, the substantial amount of time spent preparing this Motion was unwarranted; Ms. Santoni should have provided the assistance or guidance needed to expedite her firm's work.[24]  (ECF No. 82-1 at 3.)  Consequently, I will award attorney's fees only for the original 2 hours spent by Ms. Clausen preparing the Motion for Default Judgment and will award 1 hour (deducting 6.8 of the 7.8 hours) for work spent by Ms. Clausen on plaintiffs' second attempt to complete the task.  In addition, I note that attorney Jane Santoni performed 3.4 hours of work on this case at the same time that Ms. Clausen was preparing the Motion for Default Judgment.

---

[22] See ECF No. 77.

[23] Notably, the now pending Motion for Default Judgment was not plaintiffs' first attempt to obtain such relief in this case.  (See ECF Nos. 14, 55, 56.)  By the time of filing of the pending Motion, plaintiffs should have been well versed in the applicable law and procedures for obtaining a default judgment.

[24] In light of Ms. Santoni's claimed expertise in the areas of consumer protection law and debt collection (see ECF No. 82-2 at 5-6), a greater fluency in the substantive and procedural issues that arose was to be expected, and should have been reflected in a need to spend less time working on such issues.

(See ECF No. 82-1 at 3-4.)   Given Ms. Clausen's work on this matter and Ms. Santoni's experience working in similar cases, Ms. Santoni's 3.4 hours spent on case development and motions practice at this time was excessive.  I will therefore award attorney's fees for .4 hours (deducting 3 of the 3.4 hours) of work performed by attorney Jane Santoni at this stage of the litigation.

Finally, attorney Elsa Clausen requests an award of attorney's fees for 7 hours spent researching LLC dissolution, drafting a memo on this topic for Ms. Santoni, and "amending the complaint."  (ECF No. 82-2 at 2.)  As Ms. Clausen was working at all times under the guidance of Ms. Santoni, and given Ms. Santoni's experience representing parties in claims against an array of business entities, the need for such extensive research on so fundamental a feature of corporate law is not apparent.  See Price v. Upper Chesapeake Health Ventures, 192 Md. App. 695, 709, 995 A.2d 1054, 1062 (2010) ("[A]n LLC whose rights have been forfeited for tax failures still exists as an entity, but may only defend an action in court, not prosecute one").  I conclude that it was reasonable to expend 1 hour (deducting 6 of the 7 hours) on these activities.

Consequently, I recommend that plaintiffs be awarded attorney's fees in the amount of $11,780.00.  This total reflects 25.1 hours[25] of work performed by attorney Jane Santoni; 7.4 hours[26] of work performed by attorney Elsa Clausen; and 1.3 hours[27] of work performed by attorney Chelsea Ortega.  While this award of attorney's fees still exceeds what is typically awarded in similar cases, this amount recognizes the additional effort expended by plaintiffs in prosecuting the case from November 2013 until defendants' default.

---

[25] This total reflects 34.3 hours of billable work minus 9.2 hours for which the court declines to award fees.  34.3 – 9.2 = 25.1 hours.

[26] This total reflects 20.2 hours of billable work minus 12.8 hours for which the court declines to award fees.  20.2 – 12.8 = 7.4 hours.

[27] This number reflects plaintiffs' request; the court awards Ms. Ortega's full fee request.

Finally, I find that plaintiff's litigation costs of $491.50 are reasonable and documented in the record. (ECF No. 82 at 3.) <u>See also</u> Schedule of Fees, http://www.mdd.uscourts.gov/publications/Forms/ScheduleofFees.pdf (January 1, 2014) (cost of filing a civil action in this court is $400.00). Accordingly, I recommend granting plaintiff's request for $491.50 in costs.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that:

1. The Court deny plaintiffs' Motion for Entry of Default Judgment (ECF No. 75) as to defendant Crawford Johnson's Bail Bonds, Inc.;

2. The Court grant plaintiffs' Motion for Entry of Default Judgment (ECF No. 75) as to defendants America's Financial Trust, LLC and Paul O. Edherue;

3. The Court enter judgment in favor of plaintiffs and against America's Financial Trust, LLC and Paul O. Edherue; and

4. The Court award plaintiff Rosalee Wilson $500.00 in actual damages and $100.00 in statutory damages;

5. The Court award plaintiff Quintel Wilson $1,500.00 in actual damages and $500.00 in statutory damages;

6. The Court award plaintiffs $11,780.00 in attorney's fees and $491.50 in costs.

I also direct the Clerk to mail a copy of this Report and Recommendation to defendants at the address listed on plaintiff's Second Amended Complaint. (ECF No. 28.)

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Date:  March 3, 2016                               _____/s/_____

Beth P. Gesner
United States Magistrate Judge